HARWOOD LLOYD, LLC
Gregg A. Ilardi, Esq.
Michael A. McGarry, Jr., Esq.
130 Main Street
Hackensack, NJ 07601
Telephone: (201) 487-1080
Facsimile: (201) 487-4758

Attorneys for Defendant
Premier Nutrition Corporation
f/k/a Joint Juice, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAROLD M. HOFFMAN, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  vs.<br><br>JOINT JUICE, INC.,<br><br>       Defendant. | Civil Action No.:<br><br><br>**NOTICE OF REMOVAL** |

**NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

TO: THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, AND TO PLAINTIFF:

      PLEASE TAKE NOTICE that Defendant Premier Nutrition Corporation, incorrectly sued by its former name, Joint Juice, Inc. ("Defendant"), by and through its undersigned counsel, hereby removes the above-captioned action from the Superior Court of the State of New Jersey, Law Division, Bergen County, in which it is now pending, to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §§1441, 1446 and 1453, on the grounds that federal jurisdiction exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d). In accordance with 28 U.S.C. §1446(a), set forth below is a statement of the grounds for removal, and attached hereto is a copy of all process, pleadings and orders served to date in this case.

- 1 -

## I.   PROCEDURAL HISTORY

1.      On November 1, 2012, Plaintiff Harold M. Hoffman ("Plaintiff"), individually and on behalf of all others similarly situated, filed this action, captioned *Harold M. Hoffman v. Joint Juice, Inc.*, Civ. Action No. BER-L-8334-12, in the Superior Court of the State of New Jersey, Law Division, Bergen County.   True and correct copies of Plaintiff's Complaint and Summons are attached hereto as Exhibits A and B, respectively.

2.      Premier Nutrition Corporation received the Summons and copy of the Complaint, via certified mail, on November 13, 2012.

3.      This Notice of Removal is filed within thirty (30) days of the date on which Defendant was served with the Summons and Complaint.

4.      The Complaint alleges a variety of purported claims against Premier Nutrition Corporation arising out of the marketing and sale of Defendant's product, Joint Juice.   These claims include alleged violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8-1, et seq. ("NJCFA"), common law fraud, breach of express warranty, and breach of the implied warranty of merchantability.   Ex. A, Compl. ¶¶ 50, 53, 56, 59, 62, 68, 81, 85.

5.      The Complaint purports to seek relief on Plaintiff's "own behalf and on behalf of those similarly situated (the 'Class')." *Id.* at 1.   The relief sought includes injunctive relief; trebled compensatory damages; punitive damages; civil penalties under N.J.S.A. 56:8-19; restitution; pre- and post-judgment interest; and attorney's fees, expenses, and costs. *Id.* at ¶¶ 47, 51, 54, 57, 60, 63, 68, 74-75, 83, 85.

6.      Defendant has not yet filed an Answer or other responsive pleading to the Complaint, and no discovery has issued or commenced in this action.

7.      Undersigned counsel has been retained to represent the Defendant in this action.

## II.   REMOVAL IS PROPER BECAUSE THIS COURT HAS JURISDICTION UNDER 28 U.S.C. §1332(d).

8.      Plaintiff filed his Complaint on November 1, 2012. *See id.* at p. 1.   Joint Juice received the Summons and copy of the Complaint, via certified mail, on November 13,

2012. *Supra* ¶ 2. Thus, this Notice of Removal is timely filed in accordance with 28 U.S.C. §§1446(b) and 1453(b).

9.      Pursuant to CAFA, federal courts have original subject matter jurisdiction over class actions and putative class actions in which: (1) the amount in controversy exceeds $5,000,000 in the aggregate (exclusive of interest and costs); (2) any class member and any defendant are citizens of different states; and (3) there are at least 100 members in the class. *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 149 (3d Cir. 2009) (citing 28 U.S.C. §§1332(d)(2), (d)(5), (d)(6)) (affirming removal under CAFA). Here, as demonstrated below, all three of CAFA's requirements are satisfied.

10.     First, the putative class consists of at least 100 members. In his Complaint, Plaintiff alleges that "the putative class comprises *all nationwide purchasers* of Joint Juice for the six years preceding the filing of this suit." Ex. A, Compl. ¶ 45 (emphasis added). Plaintiff specifically asserts that "The Class is comprised of thousands of consumers throughout the United States." *Id.* ¶ 41.

11.     Second, at least one class member and one defendant are citizens of different states: Plaintiff is a citizen of New Jersey (Ex. A, Compl. ¶ 4), while Premier Nutrition Corporation is a company organized under the laws of the State of Delaware, with its principal place of business in San Francisco, California. Ex. C, Cooper Decl. ¶ 2.

12.     Third, the amount in controversy in this case exceeds $5,000,000 in the aggregate (exclusive of interest and costs). Plaintiff, on behalf of himself and the putative nationwide class, demands that "all monies paid by class members to Defendant for purchase of Joint Juice, including all interest earned by Defendant on such monies while in wrongful possession thereof, should be disgorged by Defendant and reimbursed to class members under principles of unjust enrichment." Ex. A, Compl. ¶ 75. In addition, plaintiff seeks injunctive relief; trebled compensatory damages; punitive damages; civil penalties under N.J.S.A. 56:8-19; pre- and post-judgment interest; and attorney's fees, expenses, and costs. *Id.* at ¶¶ 47, 51, 54, 57, 60, 63, 68, 74-75, 83, 85. Defendant denies any liability to Plaintiff and the putative class, denies that

- 3 -

Plaintiff and the putative class have incurred any recoverable damages, and also denies that New Jersey law should apply to this case. Given the nationwide sales figures for the Joint Juice products at issue, however, the amount in controversy as defined by the relief Plaintiff seeks exceeds CAFA's $5,000,000 jurisdictional threshold. *See* 28 U.S.C. §1332(d)(2).

13.      As demonstrated in the attached Declaration of David Cooper (CFO of Premier Nutrition Corporation), based on the estimated retail sales of Joint Juice products during the purported class period, the amount of compensatory damages (or restitution) potentially available under Plaintiff's allegations is at least approximately $155,702,000. Ex. C, Cooper Decl. ¶ 8 (the estimated nationwide retail sales of Joint Juice products for the class period totaled approximately $155,702,000). The gross nationwide wholesale sales of Joint Juice products totaled at least $122,794,000 for the class period. *Id.*, ¶ 7.

14.      Consequently, because this is (1) a putative class action comprised of at least 100 members, (2) in which at least one member of the putative class and one defendant are citizens of different states, and (3) the amount in controversy exceeds $5,000,000, this case falls within the original subject matter jurisdiction of this Court under 28 U.S.C. §1332(d) and is therefore removable pursuant to 28 U.S.C. §§ 1441, 1446, and 1453.

## III.     ALL OTHER STATUTORY REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED.

15.      Plaintiff filed his action in the Superior Court of the State of New Jersey, Law Division, Bergen County. Therefore, venue in the United States District Court for the District of New Jersey is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. §1441(a).

16.      No previous application has been made for the relief requested herein.

17.      Pursuant to 28 U.S.C. §1446(a), copies of all process, pleadings and orders served in this case to date are attached hereto.

- 4 -

18.    Pursuant to 28 U.S.C. §1446(d), a copy of this Notice of Removal will be promptly served on Plaintiff and promptly filed with the clerk of the Superior Court of the State of New Jersey, Law Division, Bergen County.

19.    No admission of fact, law, or liability is intended by this Notice of Removal, and Defendant expressly reserves all defenses, counterclaims, and motions otherwise available to it.

WHEREFORE, Defendant Premier Nutrition Corporation respectfully removes this action from the Superior Court of the State of New Jersey, Law Division, Bergen County, bearing Civil Action No. BER-L-8334-12, to this Court.

By: _____
Gregg A. Ilardi
HARWOOD LLOYD, LLC
130 Main Street
Hackensack, NJ 07601
Telephone:  (201) 487-1080
Facsimile:  (201) 487-4758

ARNOLD & PORTER LLP
Angel A. Garganta, Esq.
(pro hac vice application pending)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4024
Telephone:      (415) 471-3100
Facsimile:      (415) 471-3400

Attorneys for Defendant
PREMIER NUTRITION CORPORATION,
F/K/A JOINT JUICE, INC.

Dated: December 13, 2012

- 5 -

## CERTIFICATE OF SERVICE

I, Gregg. A. Ilardi. hereby certify that I caused a true and correct copy of the foregoing DEFENDANT JOINT JUICE INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT to be served in the method indicated below to the below-named attorney this ____th day of December, 2012.

- ■ HAND DELIVERY

- ☐ U.S. MAIL

- ☐ FAX TRANSMISSION

- ■ E-MAIL TRANSMISSION

- ■ ECF NOTIFICATION

Harold M. Hoffman, Esq.
240 Grand Avenue
Englewood, NJ 07631
*Attorney for Plaintiff*


_____  /s/.  _____

# EXHIBIT A

SUPERIOR COURT BERGEN COUNTY
**F I L E D**

NOV 0 7 2012

*DEPUTY CLERK*

HAROLD M. HOFFMAN, ESQ.
240 GRAND AVENUE
ENGLEWOOD, NJ 07631
(201) 569-0086
*ATTORNEY FOR PLAINTIFF AND THE PUTATIVE CLASS*

DATE FILED 11/7/12
BATCH # 009
PAYMENT # 141867
CA   CK   CC   MO
PAYOR Hoffman
AMOUNT $ 200.00
OVER

---

**HAROLD M. HOFFMAN**, individually and on behalf of those similarly situated,

        Plaintiff,

-against-

**JOINT JUICE, INC.,**

        Defendant.

SUPERIOR COURT OF NEW JERSEY
BERGEN COUNTY - LAW DIVISION

DOCKET NO.: BER-L- 8334 -12

CIVIL ACTION

**COMPLAINT AND JURY
DEMAND IN CLASS ACTION**

2012 NOV -7 AM 9:20
FINANCE DIVISION
BERGEN COUNTY



## <u>OVERVIEW</u>

By this civil action, Plaintiff brings claims on his own behalf and on behalf of those similarly situated (the "Class"), to redress nationwide injury inflicted by Defendant on the United States consumer public. As detailed below, Defendant, on a nationwide basis, advertised, promoted, marketed, distributed and sold – both online and in retail stores throughout the nation, including the State of New Jersey – a dietary supplement known as *Joint Juice,* based upon false and misrepresented claims of product efficacy.

As alleged below, Defendant manufactures, advertises, markets and sells *Joint Juice,* a dietary supplement in liquid form, as a "Daily Drink for Healthy, Flexible Joints."

According to Defendant, Joint Juice is "good for your joints," and possesses capacity to keep "cartilage lubricated and flexible." Utilizing the paid-for services of notable sports figures such as football Hall-of-Famer Joe Montana, Defendant, its product labeling and its spokespersons claim that a bottle of day [of Joint Juice] "keeps your joints in play" and that Joint Juice can deliver relief from stiff, achy joints. With these and other false claims of product efficacy, Defendant has targeted the estimated 27 million adults in the United States who suffer from osteoarthritis.

In truth and in fact, Joint Juice does not possess capacity to deliver any of these results; Defendant's product efficacy claims are false and misleading; and, the latest valid research relative to Glucosamine HCl ("Glucosamine"), the principal ingredient in Defendant's product, negates the claims and promises touted to consumers throughout the nation. Defendant's promises with respect to the purported efficacy of Joint Juice were calculated and designed to lead Plaintiff and others similarly situated to believe that Joint Juice had the capacity to deliver, *inter alia*, relief from stiff, achy joints and cartilage repair / lubrication and improved flexibility. Defendant took consumers' money predicated on these specific claims of health benefit and delivered to them, in return, nothing but broken promises.

The putative class comprises all nationwide purchasers of Joint Juice for the six year period preceding the filing of this suit.

1.      At all times relevant, Plaintiff Harold M. Hoffman resided in the State of New Jersey, County of Bergen.  Plaintiff was exposed to and read, saw and/or heard Defendant's advertising and marketing claims and promises with respect to Joint Juice, and thereafter purchased Joint Juice, in or about October of 2012.

2.      At all relevant times, Defendant JOINT JUICE, INC., was a corporation organized and existing pursuant to the laws of the State of California, with a principal place of business located in San Francisco, CA. Upon information and belief, Defendant advertises, markets and sells Joint Juice to consumers throughout the nation.

3.      Defendant advertised, marketed, distributed and sold Joint Juice in commerce throughout the United States, including but not limited to the State of New Jersey.

4.      At all relevant times, plaintiff was and is a consumer, with a place of residence in the State of New Jersey, County of Bergen.

5.      At all relevant times, Defendant constituted a "person" as defined in the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-1(d).

6.      For the six-year period preceding the filing of this action, Defendant, through television, radio, internet, electronic mail, telephone, and other marketing, as well as through retail distribution throughout the nation, including the State of New Jersey, marketed, advertised, promoted, offered and sold products to consumers, including Joint

Juice, a supplement, in liquid form, purportedly able to deliver relief from stiff, achy joints as well as joint and cartilage health and benefit to the consumer.

7.   Defendant manufactures, markets, and sells Joint Juice, touted by football legend Joe Montana, as a "Daily Drink for Healthy, Flexible Joints." According to Defendant, Joint Juice is "good for your joints," and possesses capacity to keep "cartilage lubricated and flexible." Through a variety of methods, including product labeling, Defendant claims that Joint Juice "keeps your joints in play" and that Joint Juice can deliver relief from stiff, achy joints. Defendant's target audience are those suffering from osteoarthritis, a condition resulting from the wearing out of the normal smooth cartilage surfaces of the joints. Often called wear-and-tear arthritis, osteoarthritis causes joint pain, swelling, and deformity. Osteoarthritis is the most common type of arthritis.

8.   Glucosamine, the principal constituent ingredient in Joint Juice, is an amino sugar that the body produces and distributes in cartilage and other connective tissue molecules that acts as a building block for the type of cartilage found within joints. Inside the joint, cartilage undergoes a constant process of breakdown and repair. However, to be properly repaired, the building blocks of cartilage must be present and available. The theory behind using a glucosamine supplement is that more of the cartilage building blocks will be available for cartilage repair.

9.   Defendant makes the aforementioned claims of product efficacy on its web

site and via print, radio and television advertisements, as well as through product labeling.

10.      In reality, however, no reliable clinical research supports the claims made by Defendant that oral consumption of Glucosamine, the principal ingredient in Joint Juice, can lead to cartilage health and/or deliver joint benefit. Indeed, the relevant clinical data shows precisely to the contrary. In the expert opinion of Jonathan Cluett, MD, a board certified orthopedic surgeon in Massachusetts, oral consumption of glucosamine has <u>not</u> been shown to alter the availability of cartilage building blocks inside an arthritic joint. It has <u>not</u> been shown that consumption of glucosamine increases the quantity of cartilage building blocks within <u>any</u> joint.

11.      Defendant's exaggerated and blatant misrepresentations regarding the ability of Joint Juice to deliver cartilage/joint repair and/or benefit were designed to and did lead members of the putative class to believe that Joint Juice was effective at delivering such promised benefit.

12.      Defendant, in connection with the advertisement, marketing and sale of Joint Juice claims that its product has capacity to deliver relief from the aches and pains associated with osteoarthritis. This claim too, is negated by clinical research relative to Glucosamine. In fact, the largest multi-center clinical trial ever conducted in the United States, known as the *GAIT* study (Glucosamine Arthritis Intervention Trial) tested the effects of glucosamine for the treatment of knee osteoarthritis in an effort to determine

whether glucosamine, used separately and/or in combination with other supplements, reduced pain in participants with knee osteoarthritis.

13.     The University of Utah School of Medicine coordinated this study, which was conducted at 16 rheumatology research centers across the United States. The National Center for Complementary and Alternative Medicine (NCCAM) and the National Institute of Arthritis and Musculoskeletal and Skin Diseases (NIAMS), two components of the National Institutes of Health (NIH), funded the GAIT study.

14.     Previous studies in the medical literature had conflicting results on the effectiveness of glucosamine as a treatment for osteoarthritis. GAIT was designed to test the effectiveness of glucosamine in reducing pain in a large number of participants with knee osteoarthritis. In GAIT, participants were randomly assigned to one of five treatment groups: (1) glucosamine alone, (2) chondroitin sulfate alone, (3) glucosamine and chondroitin sulfate in combination, (4) celecoxib, or (5) a placebo (an inactive substance that looks like the study substance). Glucosamine and chondroitin sulfate – both of which are constituent ingredients in Joint Juice – and their combination were compared with a placebo to evaluate whether these substances significantly improve joint pain. Celecoxib, which is a prescription drug effective in managing osteoarthritis pain, was also compared with placebo to validate the study design.

15.     To    reduce    the    chance    of    biased    results,    the    study    was

double-blinded—neither the researchers nor the participants knew which of the five treatment groups the participants were in. Participants received treatment for 24 weeks. Participants were evaluated at the start of the study and at weeks 4, 8, 16, and 24 and closely monitored for improvement of their symptoms as well as for any possible adverse reactions to the study agents. X-rays documented each participant's diagnosis of osteoarthritis. Participants were also stratified into two pain subgroups— 1,229 participants (78 percent) with mild pain and 354 participants (22 percent) with moderate-to-severe pain.

16.     The GAIT study was particularly important because an estimated 27 million adults in the United States live with osteoarthritis—the most common type of arthritis. Osteoarthritis, also called degenerative joint disease, is caused by the breakdown of cartilage, which is the connective tissue that cushions the ends of bones within the joint. Osteoarthritis is characterized by pain, joint damage, and limited motion.

17.     In the GAIT study, participants were dosed with 1500 mg daily of glucosamine, precisely the dose recommended by Defendant for its Joint Juice.

18.     The GAIT study included a total of 1,583 participants and was led by Daniel O. Clegg, M.D., a Professor of Medicine and Chief of Rheumatology, Division of Rheumatology, University of Utah, School of Medicine. The participants in the GAIT study were dosed with glucosamine at 16 study centers throughout the country, as follows: University of Alabama at Birmingham, AL; University of Arizona, Tucson, AZ;

Cedars-Sinai Medical Center, Los Angeles, CA; University of California Los Angeles, Los Angeles, CA; University of California San Francisco, San Francisco, CA; Northwestern University, Chicago, IL; Indiana University, Indianapolis, IN; The Arthritis Research and Clinical Centers, Wichita, KS; University of Nebraska Medical Center, Omaha, NE; Hospital for Joint Diseases, New York, NY; Case Western Reserve University, Cleveland, OH; University of Pennsylvania, Philadelphia, PA; University of Pittsburgh, Pittsburgh, PA; Presbyterian Hospital of Dallas, Dallas, TX; University of Utah, Salt Lake City, UT; and, Virginia Mason Medical Center, Seattle, WA.

19.     At the conclusion of this renowned study, the researchers found that there were no significant differences in pain relief experienced by study participants dosed with glucosamine and those who consumed a placebo. Moreover, separate and apart from the GAIT study, another double-blind, placebo-controlled, randomized clinical trial that lasted 12 months, conducted at Wake Forest University, in Winston-Salem, NC, also concluded that Glucosamine combined with Chondroitin Sulfate was not superior to placebo in improving function, pain, and/or mobility.

20.     Defendant's exaggerated and blatant misrepresentations regarding the ability of Joint Juice to deliver relief to those suffering from osteoarthritis were designed to and did lead members of the class to believe that Joint Juice was effective at delivering its promised benefit.

21.     Plaintiff and members of the Class relied on Defendant's misrepresentations and would not have paid as much, if at all, for Joint Juice. As a result, Defendant has wrongfully taken monies from hard-working New Jersey and U.S. consumers.

22.     Plaintiff brings this suit to enjoin the ongoing deception of nationwide consumers by Defendant and to recover the funds taken by Defendant's unlawful practices.

23.     The affirmative promises and representations made by Defendant in connection with the marketing, advertisement and sale of Joint Juice, as aforesaid, are false and are without valid medical and/or clinical support.

24.     Plaintiff and members of the putative class are purchasers of Joint Juice and, prior to purchasing the product, saw, read and/or heard Defendant's advertisements, promises and representations, as aforesaid.

25.     Plaintiff and members of the class, prior to purchasing the product, saw, read and/or heard Defendant's promises and representations as aforesaid, and made an out of pocket payment to Defendant in response thereto.

26.     The very purpose of the New Jersey Consumer Fraud Act is to protect consumers, such as the putative class members at bar, from being victimized by false promises and claims with respect to product efficacy and benefit.

27.     In truth and fact, Defendant misrepresented the efficacy and benefit of its

product. Plaintiff and members of the class paid for a product that Defendant affirmatively and specifically represented to be effective for, among other things, pain relief, cartilage repair and joint benefit, including cartilage lubrication and flexibility. Here, consumers, including plaintiff, made purchasing decisions and did, in fact, make purchases from Defendant based upon Defendant's specific representations of product efficacy and benefit.

28.     Defendant has affirmatively misrepresented and mislabeled its product.

29.     The affirmative promises and representations made by Defendant – both in product labeling and in marketing advertisements and representations – in connection with Joint Juice are false and misleading. Indeed, Defendant has affirmatively misrepresented the product's purported salutary benefits.

30.     Plaintiff and members of the class were entitled to trust the Defendant's labeling and marketing representations with respect to the product. The product delivered by Defendant to plaintiff and members of the putative class misrepresented product efficacy and benefit.

31.     Defendant's advertisements, promises and representations concerning Joint Juice are false and constitute a deception; a misrepresentation; an unconscionable trade practice; a sharp and deceitful marketplace practice, and are a false promise.

32.     Defendant's advertisements, promises and representations concerning Joint

Juice result in nationwide consumers who purchased it, being subjected to misrepresentation, false promise, fraud, deceit, trickery and false and deceptive advertising.

33.    Defendant has made affirmative misrepresentations in connection with the sale, marketing and/or advertisement of its product, Joint Juice.

34.    Plaintiff and members of the putative class suffered ascertainable loss in the form of actual out of pocket payment and expenditure, as aforesaid, as a result of Defendant's unlawful conduct as aforesaid. Plaintiff and members of the putative class paid hard earned money and received from Defendant, in exchange, a product which was unable to deliver the benefits promised by Defendant. Indeed, there was a substantial difference between the price paid by consumers, including plaintiff, for the Defendant's product, and the represented value of the product.

35.    Here, plaintiff and members of the class suffered ascertainable loss when they received, for their money, a product less than, and different from, the product promised by Defendant. The Defendant's product failed to measure up to the consumers' reasonable expectations based on the representations made by Defendant. Thus, purchasers of said product were injured and suffered loss.

36.    For their money, plaintiff and members of the class received something less than, and different from, what they reasonably expected in view of Defendant's

representations. As a result, they suffered ascertainable loss.

37.     Defendant marketed and sold Joint Juice- and consumers purchased it - on the premise that the product could deliver specified benefit.  It cannot do so. Thus, there is a causal relationship between the Defendant's misrepresentations of product efficacy and the loss suffered by plaintiff and class members.

## CLASS ALLEGATIONS

38.     Plaintiff brings this suit as a class action individually and in behalf of others similarly situated pursuant to New Jersey Court Rule 4:32.

39.     Subject to additional information obtained through further investigation and/or discovery, the definition of the Class may be expanded or narrowed. The proposed Class consists of all nationwide purchasers of Joint Juice for the six year period preceding the filing of this suit. As to the individual plaintiff, the amount in controversy in this action, including, without limitation, compensatory, treble, and/or punitive damages and counsel fees, is less than $75,000.00.  As to the putative plaintiff class, the amount in controversy in this action, including, without limitation, compensatory, treble, and/or punitive damages and counsel fees, is less than $5 million.

40.     This action has been brought and may properly be maintained as a class action pursuant to New Jersey Court Rule 4:32.

41.     **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. The Class is comprised of thousands of consumers throughout the United States.

42.     **Commonality:** Common questions of law and fact exist as to all members of the Class. These common questions predominate over the questions affecting only individual Class members, and include: whether Defendant made affirmative misrepresentations in violation of the New Jersey Consumer Fraud Act; whether Defendant misrepresented the efficacy of Joint Juice; and, the appropriate measure of damages sustained by the Plaintiff and/or other members of the Class.

43.     **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct. Plaintiff, like other members of the Class, purchased Joint Juice after exposure to the same misrepresentations and/or omissions in Defendant's advertising and received a product less than and different from the promised product. Plaintiff is advancing claims and legal theories typical to the Class.

44.     **Adequacy:** Plaintiff's claims are made in a representative capacity on behalf of all members of the Class.  Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses.

45.     Plaintiff is similarly situated in interest to all members of the proposed Class and is committed to the vigorous prosecution of this action.  Accordingly, Plaintiff is an adequate representative of the proposed Class and will fairly and adequately protect the interests of the Class. Plaintiff may identify and propose additional class representatives with the filing of Plaintiff's motion for class certification.

46.     This suit may be maintained as a class action because Defendant has acted, and/or have refused to act, on grounds generally applicable to the Class, thereby making appropriate final relief.

47.     At bar, Plaintiff also seeks injunctive relief requiring Defendant to: (i) discontinue advertising, marketing, packaging and otherwise representing Joint Juice as delivering pain relief and cartilage repair; (ii) undertake a public information campaign to Class members of their false and deceitful prior practices; and (iii) correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of Joint Juice, including without limitation, the placement of corrective advertising and providing written notice to the public.

48.     **Superiority**: In addition, this suit may be maintained as a class action because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The claims asserted herein are applicable to all consumers throughout the United States who purchased Joint Juice.

The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually effectively and cost-efficiently to redress Defendant's wrongful conduct. Individual litigation would enhance delay and expense to all parties. The class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I

49.     Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

50.     Defendant's conduct constitutes an unconscionable commercial practice in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

51.     As a proximate result of Defendant's conduct, plaintiff and members of the class were damaged.

**WHEREFORE**, plaintiff, individually and in behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

## COUNT II

52.     Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

53.     Defendant's conduct constitutes deception in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

54.     As a proximate result of Defendant's conduct, plaintiff and members of the class were damaged.

**WHEREFORE**, plaintiff, individually and in behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

## COUNT III

55.     Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

56.     Defendant's conduct constitutes fraud in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

57.     As a proximate result of Defendant's conduct, plaintiff and members of the class were damaged.

**WHEREFORE**, plaintiff, individually and in behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and

post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

## COUNT IV

58.    Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

59.    Defendant's conduct constitutes false pretense, false promise and/or misrepresentation, in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

60.    As a proximate result of Defendant's conduct, plaintiff and members of the class were damaged.

**WHEREFORE**, plaintiff, individually and in behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.


## COUNT V

61.    Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

62.    Defendant's conduct constitutes knowing concealment, suppression and/or omission of material facts with the intent that others, including members of the plaintiff-class, rely upon such concealment, suppression and/or omission, in connection

with the sale or advertisement of any merchandise in violation of the New Jersey
Consumer Fraud Act, *N.J.S.A.* 56:8-2.

63.     As a proximate result of Defendant's conduct, plaintiff and members of
the class were damaged.

**WHEREFORE**, plaintiff, individually and in behalf of the class, demands
judgment against the Defendant for treble damages together with pre-judgment and
post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.*
56:8-19, and any other and further relief as the Court deems just and proper.

## COUNT VI

64.     Plaintiff repeats and realleges the prior allegations of this complaint as if
fully set forth at length.

65.     Defendant, in the advertisement, marketing and sale of Joint Juice,
deliberately engaged in deception, false pretense, false promise and/or
misrepresentation with respect to material facts, and did so with the intent that others,
including members of the plaintiff-class, rely upon same, and, upon information and
belief, members of the class did justifiably rely upon same to their detriment.

66.     Defendant, in the advertisement, marketing and sale of Joint Juice,
deliberately and knowingly engaged in concealment, suppression and/or omission of
material facts with the intent that others, including members of the plaintiff-class, rely
upon same, and, upon information and belief, members of the class did justifiably rely

upon same to their detriment.

67.    As a proximate result of defendant's conduct, members of the class were damaged.

68.    Defendant's conduct constitutes common law fraud.

**WHEREFORE**, plaintiff, in behalf of the class, demands judgment against the Defendant for treble damages and/or punitive damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, and any other and further relief as the Court deems just and proper.

## COUNT VII

69.    Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

70.    As a result of Defendant's false and deceptive advertisements, promises and representations concerning the efficacy of Joint Juice, and as a consequence of Defendant's unconscionable trade practices, its sharp and deceitful marketplace practices, and its false promises, all as aforesaid, the class members paid money to and conferred a benefit upon Defendant in connection with the sale of Joint Juice by Defendant to class members, which benefit was received and continues to be retained by Defendant.

71.    Retention of that benefit without reimbursement by Defendant to all class members would be unjust and inequitable.

72.     Retention of that benefit by Defendant at the expense of all class members would be unjust and inequitable.

73.     Defendant, as a result of its false and deceptive conduct as aforesaid, became indebted to class members for the sums paid by class members to Defendant for purchase of a misrepresented product. Retention of said sums, without reimbursement, would result in the unlawful, unjust and inequitable enrichment of Defendant beyond its lawful rights in connection with the sale of Joint Juice to class members.

74.     All monies paid by class members to Defendant for purchase of Joint Juice, including all interest earned by Defendant on such monies while in wrongful possession thereof, should be disgorged by Defendant and reimbursed to class members under principles of unjust enrichment.

75.     As a proximate result of Defendant's conduct, members of the class were damaged.

**WHEREFORE**, plaintiff, in behalf of the class, demands judgment against the Defendant for reimbursement of sums paid by class members to Defendant for purchase of a misrepresented product, Joint Juice, together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, and any other and further relief as the Court deems just and proper.

## COUNT VIII

76.     Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

77.     In or about October of 2012, Plaintiff entered into a contract with Defendant to purchase Joint Juice.

78.     In connection with such purchase contract, Defendant, as seller, made promises to Plaintiff, as purchaser, as to the efficacy and benefit of Joint Juice that became part of the basis of the bargain.  These same promises were made by Defendant to all members of the class that purchased Joint Juice.

79.     The aforesaid promises made by Defendant, which factored into the purchase by Plaintiff and class members of Joint Juice from Defendant, created an express warranty that Defendant's product conformed to Defendant's promises.

80.     Plaintiff and class members believed that Joint Juice conformed to Defendant's promises and that they would derive the product benefits promised by Defendant.

81.     Joint Juice did not conform to Defendant's promises of efficacy and benefit. Thus, Defendant breached its express warranty.

82.     Upon information and belief, class members gave notice to Defendant that Joint Juice did not conform to Defendant's promises of efficacy and benefit.

83.     As a proximate result of Defendant's conduct, Plaintiff and members of the class were damaged by paying monies to purchase a product that failed altogether

to conform to Defendant's express promises and warranty.

WHEREFORE, plaintiff, in behalf of the class, demands judgment against the Defendant for damages in an amount to be proven at trial, together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, and any other and further relief as the Court deems just and proper.

## COUNT IX

84. Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

85. At all relevant times, Defendant was a merchant with respect to the Joint Juice product sold by Defendant to Plaintiff and members of the class. Thus, a warranty that the Joint Juice product was merchantable was implied in all contracts of sale of Joint Juice by Defendant to class members.

86. Defendant breached the implied warranty of merchantability with respect to Joint Juice in that it failed to conform to Defendant's promises of efficacy and benefit. Further, the Joint Juice product, as a result of Defendant's false labeling and misrepresentations of product efficacy, was not fit for the ordinary purpose for which it was intended to be used.

87. Upon information and belief, class members gave notice to Defendant that Joint Juice did not conform to Defendant's promises of efficacy and benefit and implied warranty of merchantability.

88. As a proximate result of Defendant's conduct, Plaintiff and members of

the class were damaged by paying monies to purchase a product that failed altogether to conform to Defendant's implied warranty of merchantability and fitness for intended purpose.

**WHEREFORE**, plaintiff, in behalf of the class, demands judgment against the Defendant for damages in an amount to be proven at trial, together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, and any other and further relief as the Court deems just and proper.

Dated: November 1, 2012

_____

HAROLD M. HOFFMAN, ESQ.
*Counsel for Plaintiff and the Putative Class*
240 Grand Avenue
Englewood, NJ 07631
*hoffman.esq@verizon.net*

## JURY DEMAND

Demand is hereby made for trial by jury as to all issues.

## TRIAL COUNSEL DESIGNATION

Pursuant to Rule 4:25-4, the Court is respectfully advised that Harold M. Hoffman, Esq., is hereby designated as trial counsel in behalf of plaintiff.

## CERTIFICATION PURSUANT TO RULE 4:5-1

Harold M. Hoffman, counsel for plaintiff, hereby certifies that the matter in controversy is not the subject of any other known pending action in this or any other

Court or any pending arbitration, nor is any other action or arbitration known to be contemplated. At this time, no other known party, other than members of the class, are anticipated for joinder.

  I certify that the foregoing is true to the best of my knowledge.  I am aware that if any of the foregoing is wilfully false, I am subject to punishment.

           _____

           HAROLD M. HOFFMAN, ESQ.

Dated:  November 1, 2012

**Appendix XII-B1**



# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1
**Pleading will be rejected for filing, under Rule 1:5-6(c),
if information above the black bar is not completed or
if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
| --- |
| PAYMENT TYPE: ☐CK ☐CG ☐CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
| --- | --- | --- |
| HAROLD M. HOFFMAN, ESQ. | (201) 569-0086 | Bergen |

| FIRM NAME (If applicable) | DOCKET NUMBER (When available) |
| --- | --- |
| | L- 8334 -12 |

| OFFICE ADDRESS | DOCUMENT TYPE |
| --- | --- |
| 240 GRAND AVENUE, ENGLEWOOD, NJ 07631-4352 | COMPLAINT |
| hoffman.esq@verizon.net | JURY DEMAND   ☒ YES   ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
| --- | --- |
| HAROLD M. HOFFMAN, Individually and on behalf of those similarly situated | HAROLD M. HOFFMAN, Individually and on behalf of those similarly situated v. JOINT JUICE, INC. |

| CASE TYPE NUMBER (See reverse side for listing) | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES   ☒ NO |
| --- | --- |
| 699 | IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING? | IF YES, LIST DOCKET NUMBERS |
| --- | --- |
| ☐ YES   ☒ NO | |

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?   ☐YES ☒ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN |
| --- | --- |
| | ☐ NONE   ☒ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?   ☐YES ☒NO | IF YES, IS THAT RELATIONSHIP | ☐ EMPLOYER-EMPLOYEE   ☐ FRIEND/NEIGHBOR   ☐ OTHER (explain) ☐ FAMILIAL   ☐ BUSINESS |
| --- | --- | --- |

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☒ YES   ☐ NO |
| --- |

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

This case is brought as a putative class action seeking recovery in behalf of a class of consumer purchasers and alleges that defendant(s) engaged in deceptive and unconscionable commercial practices in violation of the New Jersey Consumer Fraud Act.

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?   ☐YES ☒ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: |
| --- | --- |

| WILL AN INTERPRETER BE NEEDED?   ☐YES ☒ NO | IF YES, FOR WHAT LANGUAGE: |
| --- | --- |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

ATTORNEY SIGNATURE:

Revised Effective 9/2009, CN 10517



**SIDE 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I — 150 days' discovery
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |
| 999 | OTHER (Briefly describe nature of action) |

### Track II — 300 days' discovery
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603 | AUTO NEGLIGENCE – PERSONAL INJURY |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE – PROPERTY DAMAGE |
| 699 | TORT – OTHER |

### Track III — 450 days' discovery
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |
| 620 | FALSE CLAIMS ACT |

### Track IV —— Active Case Management by Individual Judge / 450 days' discovery
| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

### Centrally Managed Litigation (Track IV)
| | |
|---|---|
| 280 | Zelnorm |
| 285 | Stryker Trident Hip Implants |

### Mass Tort (Track IV)
| | | | |
|---|---|---|---|
| 248 | CIBA GEIGY | 279 | GADOLINIUM |
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL |
| 271 | ACCUTANE | 282 | FOSAMAX |
| 272 | BEXTRA/CELEBREX | 283 | DIGITEK |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 284 | NUVARING |
| 275 | ORTHO EVRA | 286 | LEVAQUIN |
| 277 | MAHWAH TOXIC DUMP SITE | 601 | ASBESTOS |
| 278 | ZOMETA/AREDIA | 619 | VIOXX |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics."
Please check off each applicable category:

☐ Verbal Threshold      ☒ Putative Class Action      ☐ Title 59

Revised Effective 9/2009, CN 10517

```
BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK        NJ 07601-7680
                                      TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (201) 527-2600
COURT HOURS

                        DATE:  NOVEMBER 09, 2012
                        RE:    HOFFMAN VS JOINT JUICE
                        DOCKET: BER L -008334 12

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

     DISCOVERY IS  300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON JOHN J. LANGAN

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      002
AT:  (201) 527-2600.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:
                                   ATT: HAROLD M. HOFFMAN
                                   HAROLD M. HOFFMAN
                                   240 GRAND AVENUE
                                   ENGLEWOOD        NJ 07631-4352

JUBDES1
```

# EXHIBIT B

HAROLD M. HOFFMAN, ESQ.
240 GRAND AVENUE
ENGLEWOOD, NJ 07631
(201) 569-0086
*ATTORNEY FOR PLAINTIFF AND THE PUTATIVE CLASS*

|  |  |
|---|---|
| HAROLD M. HOFFMAN, individually and on behalf of those similarly situated, | SUPERIOR COURT OF NEW JERSEY BERGEN COUNTY - LAW DIVISION |
| Plaintiff, | DOCKET NO.: **BER-L-8334-12** |
| -against- | CIVIL ACTION |
| JOINT JUICE, INC., | **SUMMONS** |
| Defendant. |  |

From the State of New Jersey To the Defendant(s) named above:

# JOINT JUICE, INC.

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The Complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided). If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625. A $200 filing fee, payable to the Clerk of the Superior Court, and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

/S/ *Jennifer M. Perez*
Jennifer M. Perez, Acting Superior Court Clerk

Dated: November 9, 2012

Name of Defendant to be Served: **JOINT JUICE, INC.**
Address of Defendant to be Served: c/o D. Ritterbush, 120 Howard St., Suite 600, San Francisco, CA 94105

# **EXHIBIT C**

HARWOOD LLOYD, LLC
Gregg A. Ilardi, Esq.
Michael A. McGarry, Jr., Esq.
130 Main Street
Hackensack, NJ 07601
Telephone: (201) 487-1080
Facsimile: (201) 487-4758

Attorneys for Defendant
Premier Nutrition Corporation
f/k/a Joint Juice, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAROLD M. HOFFMAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>JOINT JUICE, INC.,<br><br>        Defendant. | Civil Action No.:<br><br><br>DECLARATION OF<br>DAVID COOPER IN SUPPORT OF<br>DEFENDANT'S NOTICE OF REMOVAL |

I, David Cooper, declare as follows:

1. I am the Chief Financial Officer of Premier Nutrition Corporation formerly known as Joint Juice, Inc. ("Premier"), the Defendant in this matter. I make this Declaration in support of Defendant's Notice of Removal of this case to the District of New Jersey, and to demonstrate that the amount in controversy requirement under the Class Action Fairness Act is satisfied.

2. Premier was served with the Summons and Complaint in this case on November 13, 2012.

3. Premier is a corporation organized under the laws of the State of Delaware, and has its principal place of business in San Francisco, California.

Declaration of David Cooper in Support of Defendant_s Notice of Removal (2).docx

4.     I have personal knowledge of the facts set forth herein and, if called and sworn as a witness, I could and would competently testify as set forth herein.

5.     In my capacity as Chief Financial Officer, part of my responsibilities include overseeing all financial aspects of Premier's operations, including information related to the sales of Joint Juice, the line of products at issue in this case. My duties also include ensuring that adequate records, data, and information are accurately maintained to allow Premier to track, report and evaluate information relating to the sales of Joint Juice products. Those records are routinely relied on by Premier in connection with the operation of its business.

6.     In addition to seeking compensatory damages subject to trebling, plaintiff states in his Complaint that "All monies paid by class members to Defendant for purchase of Joint Juice, including all interest earned by Defendant on such monies while in wrongful possession thereof, should be disgorged by Defendant and reimbursed to class members under principles of unjust enrichment." Complaint ¶ 74. Plaintiff's Complaint defines the class members as "all nationwide purchasers of Joint Juice for the six year period preceding the filing of this suit." Complaint p. 2. Contrary to plaintiff's assertion that the amount in controversy in this case would be less than $5,000,000 (Complaint ¶ 39), based on Premier's financial records, actual nationwide wholesale and estimated retail sales figures for Joint Juice products demonstrate that the amount in controversy far exceeds $5,000,000.

7.     During the alleged class period of November 1, 2006 to November 1, 2012 (Complaint ¶ 39), gross nationwide *wholesale* sales of Joint Juice products totaled at least $122,794,000. To calculate this wholesale sales figure, I reviewed and relied on Premier's official company financial records maintained under my supervision and relied on by Premier in the ordinary course of business. For fiscal years 2009-2012, I obtained data from Premier's

NetSuite database which is maintained in accordance with Generally Accepted Accounting Principles. For fiscal years 2007-2008, I reviewed and relied on wholesale data reported in the Company's audited financial statements, issued by KPMG.

8.     The Plaintiff in this case is seeking a refund of the *retail* price that the purported nationwide class paid for Joint Juice during the class period. I estimate that nationwide retail sales of Joint Juice products during the alleged class period of November 1, 2006 to November 1, 2012 totaled approximately $155,702,000. Premier is a manufacturer that sells its products wholesale to retailers, which then sell the products to consumers. Although Premier can and does directly track *wholesale* sales figures for Joint Juice products, we do not have direct access to retailers' records of actual *retail* sales of those products. Accordingly, the retail sales total in this Declaration represents my best estimate, based on my experience and knowledge of our sales channels, and applying the markups that I understand our various retailers apply to Joint Juice products. Approximately 60% of Joint Juice gross sales are through Club Stores (primarily Costco and Sam's Club), which generally apply approximately an 18% markup from wholesale price. The remaining approximately 40% of Joint Juice gross sales are sold through Food, Drug, Mass ("FDM") channels at approximately a 40% markup from wholesale price. I calculated the estimated nationwide retail sales of Joint Juice stated above by applying these approximate markups to the corresponding percentage of wholesale sales of Joint Juice products for each of our two sales channels.

3

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 11Th day of December, 2012, in San Francisco, California.

DATE:

David Cooper

Declaration of David Cooper in Support of Defendant_s Notice of Removal (2).docx